**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF IOWA**

| | |
|---|---|
| **TONI MENDOSA**, *on behalf of herself and all others similarly situated,* | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | |
| **OPENLOOP HEALTH, INC.**, | **JURY TRIAL DEMANDED** |
| Defendant. | |

Plaintiff Toni Mendosa, individually and on behalf of all others similarly situated ("Plaintiff"), brings this action against Defendant OpenLoop Health, Inc. ("OpenLoop" or "Defendant"), seeking monetary damages, restitution, and/or injunctive relief for the proposed Class, as defined below. Plaintiff makes the following allegations upon information and belief, the investigation of her counsel, and personal knowledge or facts that are a matter of public record.

## I.    INTRODUCTION

1.    The release, disclosure, and publication of sensitive, private data can be devastating. Not only is it an intrusion of privacy and a loss of control, but it is a harbinger of identity theft: for victims of a data breach, the risk of identity theft more than quadruples.[1] A data breach can have grave consequences for victims for years after the actual date of the breach—with the obtained information, thieves can wreak many forms of havoc: open new financial accounts,

---

[1] Dave Maxfield & Bill Latham, Data Breaches: Perspectives from Both Sides of the Wall, 25 S.C. LAWYER 28-35 (May 2014), https://law-journals-books.vlex.com/vid/data-breaches-0514-scbj-625743678 (behind paywall) (last visited Nov. 6, 2025).

take out loans, obtain medical services, obtain government benefits, and/or obtain driver's licenses in the victims' names, forcing victims to maintain a constant vigilance over the potential misuse of its information. Moreover, the release disclosure, and publication of private medical information, such as diagnosis, medications and prescriptions can lead to sophisticated and costly insurance fraud, as well as embarrassment, humiliation and blackmail.

2.      Defendant OpenLoop is a telehealth platform that provides solutions for provider staffing, technology platform, payer coverage and RCM, licensing and credentialing, diagnostic imaging, regulatory and legal services, and practice management to digital health companies, hospitals and health systems, retailers, and employers.[2]

3.      Around January 7, 2026, the threat actor, "stuckin2019" claimed responsibility for targeting Defendant's systems and stealing Plaintiff's and Class Members' information (the "Data Breach").[3] According to a post on a cybercrime forum, the exposed dataset contains records linked to more than 1.6 million OpenLoop customers in the United States. The data reportedly contains names, email addresses, phone numbers, dates of birth, build (weight, height), medical information, biometrics, IP addresses, prescription information, and fed ex tracking numbers.[4]



---

[2] https://openloophealth.com/ (last visited Feb. 24, 2026).
[3] https://databreach.io/breaches/openloop-health-data-breach-allegedly-exposes-1-6m-patient-records/ (last visited Feb. 24, 2026).
[4] *Id.*

4.      Reportedly, on or around February 19, 2026, Larry Tritschuh, chief information security officer for OpenLoop admitted that the company "was subject to a security incident in January 2026. Upon learning of this, we acted quickly to investigate, contain, and remediate the incident. We also reached out to and coordinated with law enforcement. Now that our investigation is complete, we are moving forward toward providing notice to impacted individuals."[5]

5.      As such, most, if not all Class Members do not know that their Private Information has been compromised, putting them at significant and continuing risk of identity theft.

6.      What is extraordinarily troubling about the Data Breach is that even though Defendant knew how valuable customer information is, Defendant failed to adequately protect Plaintiff's and Class Members' Personal Identifiable Information ("PII") and Protected Health Information ("PHI") (together "Private Information"). This PII and PHI was compromised due to Defendant's negligent and/or careless acts and omissions and its utter failure to protect customers' sensitive data. Hackers targeted and obtained Plaintiff's and Class Members' Private Information because of its value in exploiting and stealing the identities of Plaintiff and Class Members. The present and continuing risk to victims of the Data Breach will remain for their respective lifetimes.

7.      OpenLoop advertises itself as a "Top White-Label Telehealth Platform," "Trusted by 3M+ patients annually."[6] OpenLoop boasts 20,000 clinicians in its network, 250,000 patient visits per month, over 600 nationwide insurance plans including Medicare and Medicaid, service to patients in all 50 states, and over 30 specialties.[7] According to Forbes, OpenLoop's revenue was $5.6 million in 2022 and was projected to end 2023 at nearly 9 times that.[8] OpenLoop could easily

---

[5] https://www.kcci.com/article/des-moines-iowa-company-openloop-faces-lawsuit-over-massive-health-data-cyberattack/70423078 (last visited Feb. 24, 2026).

[6] https://openloophealth.com/ (last visited Feb. 25, 2026).

[7] *Id.*

[8] https://www.forbes.com/profile/openloop-health/ (last visited Feb. 24, 2026).

have allocated a small portion of its revenue, assets, or profits towards cybersecurity and prevention to forestall and prevent the Data Breach. But Defendant failed to protect its patients' most sensitive PII and PHI. As a result of the Data Breach, through which their PII and PHI was compromised, disclosed, and obtained by unauthorized third parties, Plaintiff and Class Members have suffered concrete damages and are now exposed to a heightened and imminent risk of fraud and identity theft for a period of years, if not decades. Furthermore, Plaintiff and Class Members must now and in the future closely monitor their financial accounts to guard against identity theft, at their own expense. And they must make family and close friends aware that personal health information about Class Members could be used in fraud and phishing attempts targeting their friends and families. Consequently, Plaintiff and the other Class Members will incur ongoing out-of-pocket costs for, e.g., purchasing credit monitoring services, credit freezes, credit reports, or other protective measures to deter and detect identity theft and other fraudulent behavior.

8. By this Complaint, Plaintiff seeks to remedy these harms on behalf of herself, and all similarly situated individuals whose Private Information was accessed during the Data Breach.

## II.     <u>PARTIES</u>

### A. Plaintiff Toni Mendosa

9. Plaintiff Toni Mendosa is a citizen and domiciled in the state of California.

10. Plaintiff provided confidential and sensitive personally identifiable information ("PII") and protected health information ("PHI") (collectively, the "Private Information") in connection with Defendant's provision of its services. Defendants obtained and continues to maintain Plaintiff's PII and PHI and has a legal duty and obligation to protect that PII and PHI from unauthorized access and disclosure.

11.     Plaintiff would not have entrusted her PII and PHI to Defendant had she known that Defendant failed to maintain adequate data security.

12.     After learning of the Data Breach, Plaintiff subsequently spent time taking action to mitigate the impact of the Data Breach, including researching the Data Breach, researching ways to protect herself from data breaches, and reviewing her financial accounts for fraud or suspicious activity. She now plans to spend several hours a month checking account statements for irregularities.

13.     As a result of the Data Breach and the release of her PHI and PII, which she expected Defendant to protect from disclosure, Plaintiff has suffered emotional distress, including anxiety, concern, and unease about unauthorized parties viewing and potentially using her PHI and PII. As a result of the Data Breach, Plaintiff anticipates spending considerable time and money to contain the impact of the Data Breach.

**B.  Defendant OpenLoop**

14.     Defendant is an Iowa corporation with its principal place of business located at 317 6th Avenue, Suite 400, Des Moines, IA 50309.

### III.     <u>JURISDICTION AND VENUE</u>

15.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1711, *et seq.*, because at least one member of the Class, as defined below, is a citizen of a different state than Defendant, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs.

16.     The Court has personal jurisdiction over this action because Defendant maintains its principal place of business in Des Moines, Iowa, in this District, it has sufficient minimum

contacts with this District, and has purposefully availed itself of the privilege of doing business in this District such that it could reasonably foresee litigation being brought in this District.

17.    Venue is proper in this District under 28 U.S.C. § 1391(a) through (d) because Defendant's principal place of business is located in this District and a substantial part of the events or omissions giving rise to the claims occurred in, was directed to, and/or emanated from this District.

### IV.    FACTUAL BACKGROUND

**A.  Defendant failed to adequately protect patient data, resulting in the Data Breach.**

18.    In the course of its business, Defendant collects personal  and health information from patients like Plaintiff. Defendant must maintain medical records subject to the requirements and standards of the Health Insurance Portability and Accountability Act of 1996 (HIPAA).[9]

19.    As a condition of providing services, Defendant receives, creates, and handles the PII and PHI of Plaintiff and Class Members.

20.    Plaintiff and Class Members must provide Defendant with their sensitive and confidential PII and PHI to receive Defendant's services. Plaintiff reasonably expected that Defendant would safeguard her highly sensitive information and keep it confidential.

21.    Due to the sensitivity of the PII and PHI that Defendant handles, Defendant is aware of its critical responsibility to safeguard this information—and, therefore, how devastating its theft is to individuals whose information has been stolen.

22.    By obtaining, collecting, and storing Plaintiff and Class Members' PII and PHI, Defendant assumed equitable and legal duties to safeguard and keep confidential Plaintiff's and

---

[9] https://openloophealth.com/terms-of-use?m (last visited Feb. 24, 2026).

Class Members' highly sensitive information, to only use this information for business purposes, and to only make authorized disclosures.

23. Despite the existence of these duties, Defendant failed to implement reasonable data security measures to protect the information with which it was entrusted and ultimately allowed nefarious third-party hackers to compromise Plaintiff's and Class Members' PII and PHI.

24. There are likely over a million customers who do not yet know that their information was impacted by this data breach.

**B. Defendant was well aware of the need to take special care with consumers' PII, PHI, and Medical Information.**

25. On its Website Privacy Policy, OpenLoop claims "[w]e respect your privacy and are committed to protecting it through our compliance with this policy."[10] Further, OpenLoop's General Privacy Policy states, "minimum necessary use and disclosure of protected health information."[11]

26. Defendant made these representations concerning patients' PII and PHI because it knows and understands the severe consequences of losing this data.

27. As early as 2014, the FBI alerted the healthcare industry that they were an increasingly preferred target of hackers, stating "[t]he FBI has observed malicious actors targeting healthcare related systems, perhaps for the purpose of obtaining Protected Health Information (PHI) and/or Personally Identifiable Information (Personal Information)" so that these companies can take the necessary precautions to thwart such attacks.[12]

---

[10] https://openloophealth.com/website-privacy-policy (last visited Feb. 24, 2026).
[11] https://openloophealth.com/assets/openloop-privacy-policy-general.pdf (last visited Feb. 24, 2026).
[12] Reuters, *FBI warns healthcare firms they are targeted by hackers*, August 20, 2014, http://www.reuters.com/article/us-cybersecurity-healthcare-fbi-idUSKBN0GK24U20140820 (last visited Feb. 10, 2026).

28.    The healthcare industry has become a rich target for hackers: "High demand for patient information and often-outdated systems are among the nine reasons healthcare is now the biggest target for online attacks."[13] "The IT environments of healthcare organizations are often complex and difficult to secure. Devices and software continue to be used that have reached end-of-life, as upgrading is costly and often problematic. Many healthcare providers use software solutions that have been developed to work on specific – and now obsolete – operating systems and cannot be transferred to supported operating systems."[14]

29.    PII has considerable value and constitutes an enticing and well-known target to hackers. Hackers easily can sell stolen data as there has been a "proliferation of open and anonymous cybercrime forums on the Dark Web that serve as a bustling marketplace for such commerce."[15] PHI, in addition to being of a highly personal and private nature, can be used for medical fraud and to submit false medical claims for reimbursement.

**C.  Defendant failed to comply with regulatory guidance and industry-standard cybersecurity practices.**

30.    Defendant's data security failure stems from its failure to comply with state law and federal laws and requirements as well as industry standards governing the protection of PII and PHI.

---

[13] *9 reasons why healthcare is the biggest target for cyberattacks*, SwivelSecure, https://swivelsecure.com/ solutions/healthcare/healthcare-is-the-biggest-target-for-cyberattacks/ (last visited Feb. 26, 2026)

[14] Steve Alder, Editorial: *Why Do Criminals Target Medical Records*, HIPAA Journal (Jan 10, 2026), https://www.hipaajournal.com/why-do-criminals-target-medical-records/ (last visited Feb. 26, 2026).

[15] Brian Krebs, *The Value of a Hacked Company*, Krebs on Security (July 14, 2016), http://krebsonsecurity.com/2016/07/the-value-of-a-hacked-company/ (last visited Feb. 26, 2026).

31.     At least 24 states have enacted laws addressing data security practices that require businesses that own, license or maintain PII to implement and maintain reasonable security procedures and practices and to protect PII from unauthorized access.

32.     Defendant also failed to comply with Federal Trade Commission ("FTC") guidance on protecting PII and industry-standard cybersecurity practices. Section 5 of the FTC Act, 15 U.S.C. § 45, prohibits "unfair . . . practices in or affecting commerce," including, as interpreted by the FTC, failing to use reasonable measures to protect PII by companies like Defendant. Several publications by the FTC outline the importance of implementing reasonable security systems to protect data. The FTC has made clear that protecting sensitive customer data should factor into virtually all business decisions.

33.     The FTC recommends:
- Limiting access to customer information to employees who have a business reason to see it;
- keeping customer information in encrypted files provides better protection in case of theft;
- maintaining up-to-date and appropriate programs and controls to prevent unauthorized access to customer information;
- using appropriate oversight or audit procedures to detect the improper disclosure or theft of customer information;
- monitoring both in- and out-bound transfers of information for indications of a compromise, such as unexpectedly large amounts of data being transmitted from your system to an unknown user; and,
- monitoring activity logs for signs of unauthorized access to customer information[16]

34.     The FTC has also issued numerous guidelines for businesses highlighting the importance of reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.

---

[16] Federal Trade Commission, *FTC Safeguards Rule: What Your Business Needs to Know*, available at https://www.ftc.gov/business-guidance/resources/ftc-safeguards-rule-what-your-business-needs-know (last visited Feb. 25, 2026).

35.     In 2016, the FTC updated its publication, Protecting PII: A Guide for Business, which established guidelines for fundamental data security principles and practices for business.[17] The guidelines note businesses should protect the personal customer information that they keep; properly dispose of PII that is no longer needed; encrypt information stored on computer networks; understand its network's vulnerabilities; and implement policies to correct security problems. The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.

36.     The FTC recommends that businesses delete payment card information after the time needed to process a transaction; restrict employee access to sensitive customer information; require strong passwords be used by employees with access to sensitive customer information; apply security measures that have proven successful in the particular industry; and verify that third parties with access to sensitive information use reasonable security measures.

37.     The FTC also recommends that companies use an intrusion detection system to immediately expose a data breach; monitor incoming traffic for suspicious activity that indicates a hacker is trying to penetrate the system; monitor for the transmission of large amounts of data from the system; and develop a plan to respond effectively to a data breach in the event one occurs.

38.     The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an

---

[17] Federal Trade Commission, *Protecting PII: A Guide for Business*, available at https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf (last visited Feb. 26, 2026).

unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

39.     The FTC has interpreted Section 5 of the FTC Act to encompass failures to appropriately store and maintain personal data.

40.     According to the Federal Bureau of Investigation (FBI), phishing schemes designed to induce individuals to reveal personal information, such as network passwords, were the most common type of cybercrime in 2020, with such incidents nearly doubling in frequency between 2019 and 2020.[18] According to Verizon's 2025 Data Breach Investigations Report, 30% of breaches were linked to third-party involvement.[19]

41.     On October 28, 2020, the FBI and two federal agencies issued a "Joint Cybersecurity Advisory" warning that they have "credible information of an increased and imminent cybercrime threat to U.S. hospitals and healthcare providers."[20] The Cybersecurity and Infrastructure Security Agency (CISA), the Department of Health and Human Services (HHS), and the FBI issued the advisory to warn healthcare providers to take "timely and reasonable precautions to protect its networks from these threats."[21]

42.     Defendant was aware of its obligations to protect customers' PII, PHI and privacy before and during the Data Breach, yet failed to take reasonable steps to protect its patients from

---

[18] *2020 Internet Crime Report*, FBI, https://www.ic3.gov/Media/PDF/AnnualReport/2020_IC3Report.pdf  (last visited Feb. 25, 2026).

[19] https://www.verizon.com/business/resources/reports/dbir/ (last visited Feb. 26, 2026).

[20] *Ransomware Activity Targeting the Healthcare and Public Health Sector*, JOINT CYBERSECURITY ADVISORY, https://www.cisa.gov/sites/default/files/publications/AA20-302A_Ransomware%20_Activity_Targeting_the_Healthcare_and_Public_Health_Sector.pdf (last visited Feb. 26, 2026).

[21] *Id.*

unauthorized access. In this case, Defendant was at all times fully aware of obligation to protect the PII and PHI of Defendant's patients because of its experience as a telehealth company that claims to be "[p]owering the future of telehealth."[22] Defendant was also aware of the significant repercussions if it failed to do so because Defendant collected PII and PHI from thousands of customers and knew that this PII and PHI, if hacked, would result in injury to consumers, including Plaintiff and Class Members.

43.     Based upon the known details of the Data Breach and how it occurred, Defendant also failed to fully comply with industry-standard cybersecurity practices, including, but not limited to, proper firewall configuration, network segmentation, secure credential storage, rate limiting, user-activity monitoring, data-loss prevention, and intrusion detection and prevention.

**D. Defendant failed to comply with regulatory guidance and industry-standard cybersecurity practices.**

44.     Defendant is covered by HIPAA (*see* 45 C.F.R. § 160.102) and is required to comply with the HIPAA Privacy Rule and Security Rule. These rules establish national standards for the protection of patient information, including protected health information, defined as "individually identifiable health information" which either "identifies the individual" or where there is a "reasonable basis to believe the information can be used to identify the individual," that is held or transmitted by a healthcare provider. See 45 C.F.R. § 160.103.

45.     HIPAA prohibits unauthorized disclosures of "protected health information" and it requires that Defendant implement appropriate safeguards for this information. HIPAA requires that entities covered by its rules, including Defendant, provide notice of a breach of unsecured

---

[22] https://openloophealth.com/team (last visited Feb. 25, 2026).

protected health information—i.e., non-encrypted data—without unreasonable delay and in no case later than 60 calendar days after discovery of a breach.

46.    Following a data breach at a HIPAA covered entity, the HIPAA Omnibus Rule dictates it "must now undertake a four-factor risk assessment to determine whether or not PHI has been compromised and overcome the presumption that the breach must be reported." The four-factor risk assessment includes:

47.    Defendant failed to comply with these HIPAA requirements and, indeed, its own privacy practices. Defendant did not:

  a) Maintain an adequate data security system to reduce the risk of data breaches and cyber-attacks;

  b)  Adequately protect Plaintiff's and the Class Members' PII and PHI;

  c) Ensure the confidentiality and integrity of electronically protected health information created, received, maintained, or transmitted, in violation of 45 C.F.R. § 164.306(a)(1);

  d) Implement technical policies and procedures for electronic information systems that maintain electronically protected health information to allow access only to those persons or software programs that have been granted access rights, in violation of 45 C.F.R. § 164.312(a)(1);

  e) Implement adequate policies and procedures to prevent, detect, contain, and correct security violations, in violation of 45 C.F.R. § 164.308(a)(1)(i);

  f) Implement adequate procedures to review records of information system activity regularly, such as audit logs, access reports, and security incident tracking reports, in violation of 45 C.F.R. § 164.308(a)(1)(ii)(D);

g) Protect against reasonably anticipated uses or disclosures of electronic protected health information that are not permitted under the privacy rules regarding individually identifiable health information, in violation of 45 C.F.R. § 164.306(a)(3);

h) Take safeguards to ensure that Defendant's business associates adequately protect protected health information;

i) Conduct the four-factor Risk Analysis following the Data Breach;

j) Properly send timely notice to Plaintiff and Class Members pursuant to 45 C.F.R. §§ 164.400-414;

k) Ensure compliance with the electronically protected health information security standard rules by its workforce, in violation of 45 C.F.R. § 164.306(a)(4); and/or

l) Train all members of its workforce effectively on the policies and procedures with respect to protected health information as necessary and appropriate for the members of its workforce to carry out its functions and to maintain security of protected health information, in violation of 45 C.F.R. §164.530(b).

**E. The Data Breach puts Plaintiff and Class Members at increased risk of fraud and identity theft.**

48. Defendant's failure to keep Plaintiff's and Class Members' PII secure has severe ramifications. Given the sensitive nature of the PII and PHI stolen in the Data Breach—names, email addresses, phone numbers, addresses, dates of birth, medical and prescription related information, biometric information, IP addresses, and shipment tracking details—hackers can commit identity theft, financial fraud, and other identity-related fraud against Plaintiff and Class Members now and into the indefinite future. As a result, Plaintiff has suffered injury and faces an

imminent and substantial risk of further injury including identity theft and related cybercrimes due to the Data Breach.

49.     There is little doubt that consumers' PII and PHI from the Data Breach will be circulating on the dark web, as it is highly valuable. Malicious actors use PII and PHI to, among other things, gain access to consumers' bank accounts, social media, and credit cards. Malicious actors can also use consumers' PII and PHI to open new financial accounts, open new utility accounts, obtain medical treatment using victims' health insurance, file fraudulent tax returns, obtain government benefits, obtain government IDs, or create "synthetic identities."[23]

50.     Further, identity thieves often wait months or years to use PII and PHI obtained in data breaches, as victims often become complacent and less diligent in monitoring their accounts after a significant period has passed. These bad actors will also re-use stolen PII and PHI, meaning individuals can be the victim of several cybercrimes stemming from a single data breach. Moreover, although elements of some Plaintiff's and Class Members' data may have been compromised in other data breaches, the fact that the Breach centralizes the PII and PHI and identifies the victims as Defendant's customers materially increases the risk to Plaintiff and the Class.

51.     The U.S. Government Accountability Office determined that "stolen data may be held for up to a year or more before being used to commit identity theft," and that "once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years."[24] Moreover, there is often significant lag time between when a person suffers harm due to

---

[23] A criminal combines real and fake information to create a new "synthetic" identity, which is used to commit fraud.

[24] U.S. Gov't Accountability Off., GAO-07-737, Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown 42 (2007),

theft of its PII and PHI and when they discover the harm. Plaintiff will therefore need to spend time and money to continuously monitor her accounts for years to ensure the PII and PHI obtained in the Data Breach is not used to harm her. Plaintiff and Class Members thus have been harmed in the amount of the actuarial present value of ongoing high-quality identity defense and credit monitoring services made necessary as mitigation measures because of the Data Breach. In other words, Plaintiff and Class Members have been harmed by the value of identity protection services they must purchase in the future to ameliorate the risk of harm they now face due to the Data Breach.

52.     Plaintiff and Class Members have also realized harm in the lost or reduced value of their PII and PHI. Defendant admits the PII and PHI compromised in the Breach is valuable. Defendant collects, retains, and uses Plaintiff's and Class Members' PII and PHI to earn revenue. Plaintiff's and Class Members' PII and PHI is not only valuable to Defendant, but Plaintiff and Class Members also place value on their PII and PHI based on the understanding that their PII and PHI are a financial asset to companies who collect it.[25]

53.     Plaintiff and Class Members have also been harmed and damaged in the amount of the market value of the hacker's unauthorized access to Plaintiff's PII and PHI that was permitted without authorization by Defendant. This market value for access to PII and PHI can be determined by reference to both legitimate and illegitimate markets for such information.

---

https://www.govinfo.gov/content/pkg/GAOREPORTS-GAO-07-737/html/GAOREPORTS-GAO-07-737.htm (last visited Feb. 25, 2026).

[25] *See, e.g.*, Ponemon Institute, LLC, *Privacy and Security in a Connected Life: A Study of US, European and Japanese Consumers* at p. 14 (March 2015) (explaining that 53% of respondents "believe personal data is a financial asset similar to traded goods, currencies or commodities" and valuing, as but one example, its Social Security number at $55.70), available at https://docplayer.net/836701-Privacy-and-security-in-a-connected-life-a-study-of-us-european-and-japanese-consumers.html

54.     Moreover, Plaintiff and Class Members value the privacy of this information and expect Defendant to allocate enough resources to ensure it is adequately protected. Customers would not have done business with Defendant, provided their PII and payment card information, or paid the same prices for Defendant's goods and services had they known Defendant did not implement reasonable security measures to protect their PII.[26] Customers reasonably expect that the payments they make to Defendant and those made on their behalf through government programs and insurance, incorporate the costs to implement reasonable security measures to protect customers' PII and PHI. And because consumers value data privacy and security, companies with robust data security practices can command higher prices than those who do not. As a result, Plaintiff and Class Members did not receive the benefit of their bargain with Defendant because they paid for services they expected but did not receive.

55.     Given Defendant's failure to protect consumers' PII and PHI, Plaintiff and the Class Members have a significant and cognizable interest in obtaining injunctive and equitable relief (in addition to any monetary damages, restitution, or disgorgement) that protects them from suffering further harm, as their PII and PHI remain in Defendant's possession. Accordingly, this action represents the enforcement of an important right affecting the public interest and will confer a significant benefit on the general public or a large class of persons.

56.     In sum, Plaintiff and Class Members were injured as follows: (i) theft of their PII and PHI and the resulting loss of privacy rights in that information; (ii) improper disclosure of

---

[26] FireEye, *Beyond the Bottom Line: The Real Cost of Data Breaches* (May 11, 2016), https://www.e-isac.info/content/files/2024/03/rpt-beyond-bottomline.pdf (last visited Feb. 25, 2026) (noting approximately 50% of consumers consider data security to be a main or important consideration when making purchasing decisions and nearly the same percentage would be willing to pay more in order to work with a provider that has better data security. Likewise, 70% of consumers would provide less PII to organizations that suffered a data breach).

their PII and PHI; (iii) loss of value of their PII and PHI; (iv) the lost value of unauthorized access to Plaintiff's and Class Members' PII and PHI permitted by Defendant; (v) the amount of the actuarial present value of ongoing high-quality identity defense and credit monitoring services made necessary as mitigation measures because of the Data Breach; (vi) Defendant's retention of profits attributable to Plaintiff's and Class Members' PII and PHI that Defendant failed to adequately protect; (vii) the certain, imminent, and ongoing threat of fraud and identity theft, including the economic and non-economic impacts that flow therefrom; (viii) ascertainable out-of-pocket expenses and the value of its time allocated to fixing or mitigating the effects of the Data Breach; (ix) overpayments to Defendant for goods and services purchased, as Plaintiff reasonably believed a portion of the sale price would fund reasonable security measures that would protect their PII and PHI, which was not the case; and (x) nominal damages.

## V.    CLASS ACTION ALLEGATIONS

57.    Plaintiff brings this action as a class action under Cal. Civ. Proc. Code § 382 on behalf of a proposed nationwide class (the "Class"), as defined as:

> All natural persons in the United States whose Personally Identifiable Information and/or Protected Health Information was compromised as a result of the Data Breach.

58.    The California Subclass is defined as follows:

> **California Subclass:** All Class Members who reside in the State of California.

59.    **Numerosity**: Plaintiff does not know the exact size of the Class or identity of the Class Members, since such information is in the exclusive control of Defendant. Nevertheless, the Class encompasses at least one million individuals dispersed throughout the United States. The number of Class Members is so numerous that joinder of all Class Members is impracticable. The names, addresses, and phone numbers of Class Members are identifiable through documents maintained by Defendant.

60. **Commonality and Predominance**: This action involves common questions of law and fact which predominate over any question solely affecting individual Class Members. These common questions include:

   a. whether Defendant engaged in the conduct alleged herein;

   b. whether Defendant had a legal duty to use reasonable security measures to protect Plaintiff's and Class Members' PII and PHI;

   c. whether Defendant timely, accurately, and adequately informed Plaintiff and Class Members that their PII and PHI had been compromised;

   d. whether Defendant breached its legal duty by failing to protect the PII and PHI of Plaintiff and Class Members;

   e. whether Defendant acted reasonably in securing the PII and PHI of Plaintiff and Class Members;

   f. whether Plaintiff and Class Members are entitled to injunctive relief; and

   g. whether Plaintiff and Class Members are entitled to damages and equitable relief.

61. **Typicality**: Plaintiff's claims are typical of the other Class Members' claims because all Class Members were comparably injured through Defendant's substantially uniform misconduct, as described above. Plaintiff is advancing the same claims and legal theories on behalf of herself and all other members of the Class that she represents, and there are no defenses that are unique to Plaintiff. The claims of Plaintiff and Class Members arise from the same operative facts and are based on the same legal theories.

62. **Adequacy**: Plaintiff is an adequate Class representative because her interests do not conflict with the interests of the other members of the Class they seek to represent; Plaintiff has retained counsel competent and experienced in complex class action litigation; and Plaintiff intends to prosecute this action vigorously. The Class's interest will be fairly and adequately protected by Plaintiff and her counsel.

63.    **Superiority**: A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages and other detriment suffered by Plaintiff and other Class Members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be virtually impossible for the Class Members to individually seek redress for Defendant's wrongful conduct. Even if Class Members could afford individual litigation, the court system could not: individualized litigation creates a potential for inconsistent or contradictory judgments, increases the delay and expense to parties, and increases the expense and burden to the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by this Court.

## VI.    <u>CAUSES OF ACTION</u>

### A.  Claims Brought on Behalf of the Nationwide Class

<u>FIRST CAUSE OF ACTION</u>
<u>NEGLIGENCE</u>

64.    Plaintiff incorporates the foregoing allegations 1 to 64 as if fully set herein.

65.    OpenLoop requires its patients to submit non-public PII and PHI as a condition of its services. OpenLoop gathered and stored the Private Information of Plaintiff and Class Members as part of its business.

66.    Defendant knew and understood that cyberattacks are a foreseeable risk against which it was required to protect. OpenLoop had full knowledge of the sensitivity of the Private Information and the types of harm that Plaintiff and Class Members could and would suffer if their Private Information was wrongfully disclosed.

67.     By assuming the responsibility to collect and store Private Information, Defendant had duties of care to use reasonable means to secure and to prevent disclosure of the information, and to safeguard the information from theft.

68.     Defendant owed a duty to Plaintiff and Class Members, arising from the sensitivity of the information, the expectation the information was going to be kept private, and the foreseeability of its data safety shortcomings resulting in an intrusion, to exercise reasonable care in safeguarding its sensitive personal information. This duty included, among other things, designing, implementing, maintaining, monitoring, and testing Defendant's networks, systems, protocols, policies, procedures, and practices to ensure that Plaintiff's and Class Members' information was adequately secured from unauthorized access.

69.     Defendant's privacy policies acknowledge Defendant's duty to adequately protect Plaintiff's and Class Members' PII and PHI.

70.     Defendant is covered by HIPAA (see 45 C.F.R. § 160.102) and, as such is required to comply with the HIPAA Privacy Rule and Security Rule, 45 C.F.R Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information"), and Security Rule ("Security Standards for the Protection of Electronic Protected Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and C.

71.     Defendant owed a duty to Plaintiff and Class Members to implement administrative, physical, and technical safeguards, such as intrusion detection processes that detect data breaches in a timely manner, to protect and secure Plaintiff's and Class Members' PII and PHI.

72.     Defendant also had a duty to only maintain PII and PHI that was needed to serve customer needs.

73.     Defendant also had independent duties under Plaintiff's and Class Members' state laws that required Defendant to reasonably safeguard Plaintiff's and Class Members' PII and PHI and promptly notify them about the Data Breach.

74.     Defendant had a special relationship with Plaintiff and Class Members as a result of being entrusted with their PII and PHI, which provided an independent duty of care. Plaintiff's and Class Members' willingness to entrust Defendant with their PII and PHI was predicated on the understanding that Defendant would take adequate security precautions. Moreover, Defendant was capable of protecting its networks and systems, and the PII and PHI it stored on them, from unauthorized access.

75.     Defendant breached its duties by, among other things: (a) failing to implement and maintain adequate data security practices to safeguard Plaintiff's and Class Members' PII and PHI, including administrative, physical, and technical safeguards; (b) failing to detect the Data Breach in a timely manner; and (c) failing to disclose that its data security practices were inadequate to safeguard Plaintiff's and Class Members' PII and PHI.

76.     But for Defendant's breach of duties, including the duty to use reasonable care to protect and secure Plaintiff's and Class Members' PII and PHI, Plaintiff's and Class Members' PII and PHI would not have been accessed by unauthorized parties.

77.     Plaintiff and Class Members were foreseeable victims of Defendant's inadequate data security practices. Defendant knew or should have known that a breach of its data security systems would cause damage to Plaintiff and Class Members.

78.     It was reasonably foreseeable that the failure to reasonably protect and secure Plaintiff's and Class Members' PII and PHI would result in unauthorized access to Defendant's

networks, databases, and computers that stored or contained Plaintiff's and Class Members' PII and PHI.

79.    As a result of Defendant's negligent failure to prevent the Data Breach, Plaintiff and Class Members suffered injury, which includes, but is not limited to, exposure to a heightened and imminent risk of fraud, identity theft, and financial harm. Plaintiff and Class Members must monitor their financial accounts and credit histories more closely and frequently to guard against identity theft. Plaintiff and Class Members have also incurred, and will continue to incur on an indefinite basis, out-of-pocket costs for obtaining credit reports, credit freezes, credit monitoring services, and other protective measures to deter and detect identity theft. The unauthorized acquisition of Plaintiff's and Class Members' PII and PHI has also diminished the value of the PII and PHI.

80.    The harm to Plaintiff and Class Members was a proximate, reasonably foreseeable result of Defendant's breaches of the aforementioned duties.

81.    Therefore, Plaintiff and Class Members are entitled to damages in an amount to be proven at trial.

**SECOND CAUSE OF ACTION**
**NEGLIGENCE PER SE**

82.    Plaintiff incorporates the foregoing allegations 1 to 64 as if fully set forth herein.

83.    Under the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45, Defendant had a duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiffs' and Class Members' PII.

84.    In addition, under state data security statutes, Defendant had a duty to implement and maintain reasonable security procedures and practices to safeguard Plaintiffs' and Class Members' PII and PHI.

85.     Defendant breached these duties to Plaintiffs and Class Members, under the FTCA and state data security statutes, by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiffs' and Class Members' PII and PHI.

86.     Defendant is covered by HIPAA (45 C.F.R. § 160.102) and is required to comply with the HIPAA Privacy Rule and Security Rule, 45 C.F.R Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information"), and Security Rule ("Security Standards for the Protection of Electronic Protected Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and C. HIPAA prohibits unauthorized disclosures of "protected health information." which includes the information at issue here.

87.     Defendant is covered by the California Medical Information Act ("CMIA") (Cal Civ. Code § 56.10(a), (d) and (e), 56.36(b), 56.101(a) and (b)) and is required to ensure that medical information regarding patients is not disclosed or disseminated or released without patient's authorization, and to protect and preserve the confidentiality of the medical information regarding a patient, under Civil Code §§ 56.06, 56.10, 56.13, 56.20, 56.245, 56.26, 56.35, 56.36, and 56.101.

88.     Defendant breached these duties to Plaintiff and Class Members, under the FTCA, HIPAA, and CMIA, by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiff's and Class Members' Private Information.

89.     Plaintiff and Class Members were foreseeable victims of Defendant's violations of the FTCA, HIPAA and state data security statutes. Defendant knew or should have known that the failure to implement reasonable measures to protect and secure Plaintiff's and Class Members' PII and PHI would cause damage to Plaintiff and Class Members.

90.     Defendant's failure to comply with the applicable laws and regulations constitutes negligence *per se.*

91.     But for Defendant's violation of the applicable laws and regulations, Plaintiff's and Class Members' PII and PHI would not have been accessed by unauthorized parties.

92.     As a result of Defendant's failure to comply with applicable laws and regulations, Plaintiff and Class Members suffered injury, which includes but is not limited to the exposure to a heightened and imminent risk of fraud, identity theft, financial and other harm. Plaintiff and Class Members must monitor their financial accounts and credit histories more closely and frequently to guard against identity theft. Plaintiff and Class Members also have incurred, and will continue to incur on an indefinite basis, out-of-pocket costs for obtaining credit reports, credit freezes, credit monitoring services, and other protective measures to deter or detect identity theft. The unauthorized acquisition of Plaintiff's and Class Members' Private Information has also diminished the value of the PII and PHI.

93.     The harm to Plaintiff and the Class Members was a proximate, reasonably foreseeable result of Defendant's breaches of the applicable laws and regulations.

94.     Therefore, Plaintiff and Class Members are entitled to damages in an amount to be proven at trial.

### THIRD CAUSE OF ACTION
### GROSS NEGLIGENCE

95.     Plaintiff incorporates the foregoing allegations 1 to 64 as if fully set forth herein.

96.     Plaintiff and Class Members entrusted Defendant with highly sensitive and inherently personal private data subject to confidentiality laws.

97.     In requiring, obtaining and storing Plaintiff's and Class Members' PII and PHI, Defendant owed a duty of reasonable care in safeguarding the PII and PHI.

98.    Defendant's networks, systems, protocols, policies, procedures, and practices, as described above, were not adequately designed, implemented, maintained, monitored, and tested to ensure that Plaintiff's and Class Members' PII and PHI were secured from unauthorized access.

99.    Defendant's networks, systems, protocols, policies, procedures, and practices, as described above, were not reasonable given the sensitivity of the Plaintiff's and Class Members' private data and the known vulnerabilities of Defendant's systems.

100.    Defendant did not comply with state and federal laws and rules concerning the use and safekeeping of this private data.

101.    Upon learning of the Data Breach, Defendant should have immediately disclosed the Data Breach to Plaintiff and Class Members, credit reporting agencies, the Internal Revenue Service, financial institutions, and all other third parties with a right to know and the ability to mitigate harm to Plaintiff and Class Members as a result of the Data Breach.

102.    Despite knowing its networks, systems, protocols, policies, procedures, and practices, as described above, were not adequately designed, implemented, maintained, monitored, and tested to ensure that Plaintiff's and Class Members' PII and PHI were secured from unauthorized access, Defendant ignored the inadequacies and was oblivious to the risk of unauthorized access it had created.

103.    Defendant's behavior establishes facts evidencing a reckless disregard for Plaintiff's and Class Members' rights.

104.    Defendant, therefore, was grossly negligent.

105.    Defendant's negligence also constitutes negligence per se.

106.    The negligence is directly linked to injuries.

107.   As a result of Defendant's reckless disregard for Plaintiff's and Class Members' rights by failing to secure their PII and PHI, despite knowing its networks, systems, protocols, policies, procedures, and practices were not adequately designed, implemented, maintained, monitored, and tested, Plaintiff and Class Members suffered injury, which includes but is not limited to the exposure to a heightened, imminent risk of fraud, identity theft, financial and other harm. Plaintiff and Class Members must monitor their financial accounts and credit histories more closely and frequently to guard against identity theft. Plaintiff and Class Members also have incurred, and will continue to incur on an indefinite basis, out-of-pocket costs for obtaining credit reports, credit freezes, credit monitoring services, and other protective measures to deter or detect identity theft. The unauthorized acquisition of Plaintiff's and Class Members' PII and PHI has also diminished the value of the PII and PHI.

108.   The harm to Plaintiff and the Class Members was a proximate, reasonably foreseeable result of Defendant's breaches of the applicable laws and regulations.

109.   Therefore, Plaintiff and Class Members are entitled to damages in an amount to be proven at trial.

**FOURTH CAUSE OF ACTION**
**BREACH OF IMPLIED CONTRACTS**

110.   Plaintiff incorporates the foregoing allegations 1 to 64 as if fully set forth herein.

111.   Plaintiff and Class Members were required to provide their PII and PHI to obtain services from Defendant. Plaintiff and Class Members entrusted their PII and PHI to Defendant in order to obtain services from it.

112.   By providing their PII and PHI, and upon Defendant's acceptance of such information, Plaintiff and Class Members on one hand, and Defendant on the other hand, entered into implied contracts for the provision of adequate data security, separate and apart from any

express contracts concerning the services provided, whereby Defendant was obligated to take reasonable steps to secure and safeguard that information.

113. Defendant had an implied duty of good faith to ensure that the PII and PHI of Plaintiffs and Class Members in its possession was only used in accordance with its contractual obligations.

114. Defendant was therefore required to act fairly, reasonably, and in good faith in carrying out its contractual obligations to protect the confidentiality of Plaintiff's and Class Members' Private Information and to comply with industry standards and state laws and regulations for the security of this information, and Defendant expressly assented to these terms in its privacy policies as alleged above.

115. Under these implied contracts for data security, Defendant was further obligated to provide Plaintiff and all Class Members with prompt and sufficient notice of any and all unauthorized access and/or theft of their PII and PHI.

116. Plaintiff and Class Members performed all conditions, covenants, obligations, and promises owed to Defendant, including paying for the services provided by Defendant and/or providing the PII and PHI required by Defendant.

117. Defendant breached the implied contracts by failing to take adequate measures to protect the confidentiality of Plaintiffs' and Class Members' PII and PHI, resulting in the Data Breach. Defendant unreasonably interfered with the contract benefits owed to Plaintiffs and Class Members.

118. Further, Defendant has not yet provided Data Breach notifications to affected Class Members who may already be victims of identity fraud or theft, or are at imminent risk of becoming victims of identity theft or fraud, associated with the PII or PHI that they provided to

Defendant. These Class Members are unaware of the potential source for the compromise of their PII and PHI.

119. The Data Breach was a reasonably foreseeable consequence of Defendant's actions in breach of these contracts.

120. As a result of Defendant's conduct, Plaintiff and Class Members did not receive the full benefit of the bargain, and instead received services that were of a diminished value as compared to the secure services they paid for. Plaintiff and Class Members, therefore, were damaged in an amount at least equal to the difference in the value of the secure services they paid for and the services they received.

121. Neither Plaintiff, nor Class Members, nor any reasonable person would have provided their PII and PHI to Defendant had Defendant disclosed that its security was inadequate or that it did not adhere to industry-standard security measures.

122. As a result of Defendant's breach, Plaintiff and Class Members have suffered actual damages resulting from theft of their PII and PHI, as well as the loss of control of their PII and PHI, and remain in imminent risk of suffering additional damages in the future.

123. As a result of Defendant's breach, Plaintiff and Class Members have suffered actual damages resulting from their attempts to mitigate the effect of the breach of implied contract and subsequent Data Breach, including, but not limited to, taking steps to protect themselves from the loss of their PII and PHI. As a result, Plaintiff and the Class Members have suffered actual identity theft and the ability to control their PII and PHI.

124. Accordingly, Plaintiff and Class Members have been injured as a result of Defendant's breach of implied contracts and are entitled to damages and/or restitution in an amount to be proven at trial.

**FIFTH CAUSE OF ACTION**
**UNJUST ENRICHMENT**

125.    Plaintiff incorporates the foregoing allegations 1 to 64 as if fully set forth herein.

126.    Plaintiff and Class Members conferred a monetary benefit on Defendant in the form of monetary payments—directly or indirectly—for services received.

127.    Defendant collected, maintained, and stored the PII and PHI of Plaintiff and Class Members and, as such, Defendant had knowledge of the monetary benefits conferred by Plaintiff and Class Members.

128.    The money that Plaintiff and Class Members paid to Defendant should have been used to pay, at least in part, for the administrative costs and implementation of data management and security. Defendant failed to implement—or adequately implement—practices, procedures, and programs to secure sensitive PII and PHI, as evidenced by the Data Breach.

129.    As a result of Defendant's failure to implement security practices, procedures, and programs to secure sensitive PII and PHI, Plaintiff and Class Members suffered actual damages in an amount equal to the difference in the value between services with reasonable data privacy that Plaintiff and Class Members paid for, and the services they received without reasonable data privacy.

130.    Under principles of equity and good conscience, Defendant should not be permitted to retain money belonging to Plaintiff and Class Members because Defendant failed to implement the data management and security measures that are mandated by industry standards and that Plaintiff and Class Members paid for.

131.    Defendant should be compelled to disgorge into a common fund for the benefit of Plaintiff and the Class all unlawful or inequitable proceeds received by Defendant. A constructive

trust should be imposed upon all unlawful and inequitable sums received by Defendant traceable to Plaintiff and the Class.

## SIXTH CAUSE OF ACTION
## INVASION OF PRIVACY

132. Plaintiff incorporates the foregoing allegations 1 to 64 as if fully set forth herein.

133. Plaintiff and Class Members took reasonable and appropriate steps to safeguard their private information as their PII and PHI was not known to the general public before the Data Breach.

134. Plaintiff and Class Members reasonably expected their Private Information to remain confidential and entrusted Defendant with this information solely for the purpose of receiving medical treatment. Plaintiff and Class Members are entitled to have their PII and PHI remain secure against the disclosure of this information to unauthorized third parties.

135. OpenLoop owed Plaintiff and Class Members a duty to keep their private information confidential. OpenLoop breached this duty by insufficiently safeguarding against the Data Breach.

136. The unauthorized release of Plaintiff and Class Members' PII and PHI is highly offensive to a reasonable person.

137. Plaintiff and Class Members' PII and PHI is not of legitimate concern to the public.

138. Defendant knew or should have known that Plaintiff and Class Members' PII and PHI were confidential and private, and thus should not be disclosed.

139. Defendant publicized Plaintiff and Class Members' private information by disclosing this information to hackers who have no legitimate interest in this information. These hackers sought to monetize Plaintiff's private information through fraud and circulating it within the illicit Dark Web.

140.    Plaintiff and Class Members' private information is likely published on the Dark Web and will likely be used to commit fraud. Plaintiff and Class Members' private information would therefore be subsequently and fraudulently be published to other healthcare providers, financial institutions, and government entities.

141.    It is substantially certain the Plaintiff and Class Members' PII and PHI is becoming public knowledge due to the Data Breach and the subsequent fraud that it entails.

142.    Defendant's public disclosure of Plaintiff's private facts directly and proximately caused Plaintiff's injury-in-fact and damages previously stated. Defendant's actions constitute an invasion of privacy.

## SEVENTH CAUSE OF ACTION
## DECLARATORY JUDGMENT

143.    Plaintiff incorporates the foregoing allegations 1 to 64 as if fully set forth herein.

144.    Plaintiff and the Class state claims against Defendant based on negligence, negligence per se and gross negligence, and violations of various statutes.

145.    Defendant failed to fulfill its obligations to provide adequate and reasonable security measures for the PII and PHI of Plaintiff and the Class, as evidenced by the Data Breach.

146.    As a result of the Data Breach, Defendant's system is more vulnerable to unauthorized access and requires more stringent measures to be taken to safeguard the PII and PHI of Plaintiff and the Class going forward.

147.    An actual controversy has arisen in the wake of the Data Breach regarding Defendant's current obligations to provide reasonable data security measures to protect the PII and PHI of Plaintiff and the Class. Defendant maintains that its security measures were—and still are—reasonably adequate and denies that it previously had or has any obligation to implement better safeguards to protect the PII and PHI of Plaintiff and the Class.

148.     Plaintiff seeks a declaration that Defendant must implement specific additional, prudent industry security practices to provide reasonable protection and security to the PII and PHI of Plaintiff and the Class. Specifically, Plaintiff and the Class seek a declaration that Defendant's existing security measures do not comply with its obligations, and that Defendant must implement and maintain reasonable security measures on behalf of Plaintiff and the Class to comply with its data security obligations.

### B.  Claims Brought on Behalf of the California Subclass

149.     Plaintiff brings these claims on behalf of herself and the California Subclass, referred to as "Class Members" in this section.

**EIGHT CAUSE OF ACTION**
**VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW**
**BUSINESS & PROFESSIONS CODE SECTION 17200, *et seq.* ("UCL")**

150.     Plaintiff incorporates the foregoing allegations 1 to 63 as if fully set forth herein.

151.     Defendant is a "person" under the UCL, Cal. Bus. & Prof. Code § 17201.

152.     Under California's UCL, Cal. Bus. & Prof. Code Section 17200, *et seq.*, a business practice is "unfair" when "any injury it causes outweighs any benefits provide[d] to consumers and the injury is one that the consumers themselves could not reasonably avoid." *Camacho v. Auto Club of Southern California*, 142 Cal. App. 4th 1394, 1403 (2006).

153.     Defendant's failure to implement and maintain adequate security measures does not benefit consumers. Defendant implemented insufficient and ineffective security measures. Defendant diverted the funds necessary to ensure sufficient data security, which lead to the Data Breach. Defendant did not follow necessary protocols, policies, and procedures necessary for security and encryption in line with industry standards and requirements. Defendant concealed and omitted the material fact that it inadequately secured Plaintiff's and Class Members' Private

Information. Defendant concealed and omitted the material fact that it did not fulfill its statutory obligations and common law duties for security of Class Members' PII. Defendant did not timely or adequately notify Plaintiff or Class Members about the Data Breach, its scope, or the information exfiltrated, such that they could not take appropriate mitigating steps to prevent identity theft and other harm.

154.    Defendant was deceptive, misleading, and unreasonable, constituting an unfair business practice as interpreted by Cal. Bus. And Prof. Code Section 17200. Defendant's actions, as described herein, has resulted in harm to consumers who paid for Defendant's products and services inconsistent with reasonable expectations of data security.

155.    California's UCL finds a business practice is "unlawful" when Defendant breaches state or federal law and the "unfair competition law makes [these breaches] independently actionable." *Velazquez v. GMAC Mortg. Corp.*, 605 F. Supp. 2d 1049, 1068 (C.D. Cal. 2008). Defendant engaged in "unlawful" business practices by violating the FTC Act, 15 U.S.C. § 45, California State Law, and California Common law.

156.    Defendant's conduct, as alleged herein, is deceptive, misleading, unreasonable, and constitutes unlawful conduct. Defendant's conduct, including misrepresentations and omissions, was material because a regular consumer would be deceived about Defendant's data security standards. Defendant disregarded Plaintiff's and Class Members' rights. Defendant maliciously, intentionally, and knowingly violated California's Unfair Competition Law.

157.    Defendant's unfair and unlawful conduct directly and proximately caused Plaintiff's and Class Members' injuries, including lost money or property. But for Defendant's unfair and unlawful acts, Plaintiff's and Class Members' harm would not have occurred, including an increased imminent risk of identity theft, a diminished value for their personal information, and

necessary time and expenses for monitoring fraudulent activity. Due to Defendant's unlawful conduct, as alleged herein, customers who entrusted their Private Information to Defendant have suffered injuries-in-fact as a result of the Data Breach.

158.    Defendant's failure to enforce proper security measures violates public policy, which is designed to protect consumers' data and to ensure that organizations entrusted with such data adopt necessary security protocols. These objectives are reflected in laws such as the FTC Act, 15 U.S.C. § 45, CMIA, Cal. Civ. Code §56 *et seq.*, and other California statutes. Consumers cannot reasonably avoid the injuries that Defendant caused as alleged herein. Victims' injuries outweigh potential benefits to the Defendant. Defendant could have furthered their business interests in a manner other than this unfair conduct.

159.    Plaintiff and Class Members seek an order enjoining Defendant from continuing its unlawful, deceptive, and unfair business practices. Plaintiff and Class Members seek an order requiring Defendant to implement and maintain sufficient data security practices in accordance with its statutory and common law duties. Plaintiff and Class Members request an award for restitution for the money wrongfully acquired by Defendant's unfair and unlawful practices.

## NINTH CAUSE OF ACTION
## VIOLATION OF THE CONSUMER LEGAL REMEDIES ACT
## CALIFORNIA CIVIL CODE SECTION 1750, *et seq.* ("CLRA")

160.    Plaintiff incorporates the foregoing allegations 1 to 63 as if fully set forth herein.

161.    Plaintiff brings this claim on behalf of California Subclass Members, referred to as "Class Members" in this section.

162.    The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices" in connection with the sale of services. Cal. Civ. Code § 1770.

163.    Defendant's unlawful conduct described herein was intended to increase sales to the consuming public and violated Section 1770(a)(5), (a)(7), and (a)(9) of the CLRA by

representing that the products and services have characteristics and benefits, such as appropriate data security, that they do not have.

164.    Defendant fraudulently deceived Plaintiff and the Class by representing that its products and services have certain characteristics, benefits, and qualities which they do not have, namely data protection and security. In doing so, Defendant intentionally misrepresented and concealed material facts from Plaintiff and the Class, specifically by advertising secure services when Defendant in fact failed to institute adequate security measures and neglected system vulnerabilities that led to a data breach. Said misrepresentations and concealment were done with the intention of deceiving Plaintiff and the Class and depriving them of their legal rights and money.

165.    Defendant's claims about the products and services led and continues to lead consumers like Plaintiff to reasonably believe that Defendant has implemented adequate data security measures when Defendant in fact neglected system vulnerabilities that led to a data breach and enabled hackers to access customers' PII and PHI.

166.    Defendant knew or should have known that adequate security measures were not in place and that consumers' PII and PHI was vulnerable to a data breach. Plaintiff and the Class have suffered injury in fact as a result of and in reliance upon Defendant's false representations. Plaintiff and the Class would not have purchased the products or used the services or would have paid significantly less for the products and services, had they known that their Private Information was vulnerable to a data breach.

167.    Defendant's actions as described herein were done with conscious disregard of Plaintiff and the rights of Class Members, and Defendant was wanton and malicious in its concealment of the same.

168.    Plaintiff and the Class have suffered injury in fact and have lost money as a result of Defendant's unfair, unlawful, and fraudulent conduct. Specifically, Plaintiff paid for products and services advertised as secure, and consequentially entrusted Defendant with her Private Information, when Defendant in fact failed to institute adequate security measures and neglected vulnerabilities that led to a data breach. Plaintiff and the Class would not have purchased the products and services, or would not have provided Defendant with their PII and PHI, had they known that their Private Information was vulnerable to a data breach.

169.    Defendant should be compelled to implement adequate security practices to protect customers' PII and PHI.

170.    Plaintiff and Class Members seek all monetary and nonmonetary relief allowed by law including restitution; reasonable attorneys' fees and costs under California Code of Civil Procedures § 1021.5; and injunctive relief under the CLRA pursuant to Cal. Civ. Code 1782(d) and other appropriate equitable relief.

### NINTH CAUSE OF ACTION
### VIOLATION OF THE CONFIDENTIALITY OF
### MEDICAL INFORMATION ACT, CIV. CODE § 56, *et seq.*

171.    Plaintiff incorporates the foregoing allegations 1 to 63 as if fully set forth herein.

172.    Plaintiff brings this claim on behalf of herself and the California Subclass, referred to as "Class Members" in this section.

173.    Plaintiff is a "patient" as defined in Cal. Civ. Code § 56.05(m), and Defendant is "a provider of health care," as defined in Cal. Civ. Code § 56.06; thus, Defendant is subject to the requirements of the California Confidentiality of Medical Information Act ("CMIA"), Cal. Civ. Code § 56.10(a), (d) and (e), 56.36(b), 56.101(a) and (b).

174.    Furthermore, Plaintiff and Class Members, as customers of Defendant, had their individually identifiable "medical information," within the meaning of Cal. Civ. Code § 56.05(j),

created, maintained, preserved, and stored on Defendant's computer network, and were patients on or before the date of the Data Breach.

175.    At all relevant times, Defendant was a provider of healthcare because it had the "purpose of maintaining medical information to make the information available to the individual or to a provider of health care at the request of the individual or a provider of health care, for purposes of allowing the individual to manage her information, or for the diagnosis or treatment of the individual." Cal. Civ. Code § 56.06(a).

176.    As a provider of health care, Defendant was required by the CMIA to ensure that medical information regarding patients is not disclosed or disseminated or released without patient's authorization, and to protect and preserve the confidentiality of the medical information regarding a patient, under Civil Code §§ 56.06, 56.10, 56.13, 56.20, 56.245, 56.26, 56.35, 56.36, and 56.101.

177.    "Every provider of healthcare who… creates, maintains, preserves, stores, abandons, destroys, or disposes of medical information shall do so in a manner that preserves the confidentiality of the information contained therein." Cal. Civ. Code § 56.101. Any provider of healthcare who "negligently creates, maintains, preserves, stores, abandons, destroys, or disposes of medical information shall be subject to the remedies and penalties provided under subdivisions (b) and (c) of Section 56.36. *Id.*

178.    As a provider of provider of healthcare, OpenLoop negligently created, maintained, preserved, stored, and then exposed Plaintiff's and Class Members' individually identifiable "medical information," within the meaning of Cal. Civ. Code 56.05(j). As set forth above, Defendant stored medical information on an insufficiently secure computer system and so failed to exercise reasonable care in the creation, maintenance, preservation, and storage of this medical

information. Defendant's negligence directly resulted in the exfiltration of patient PII and PHI in the Data Breach. On information and belief, this patient information was stolen, accessed, and viewed by unauthorized persons, so patient confidentiality was not preserved.

179.    Defendant's negligence resulted in the release of individually identifiable medical information pertaining to Plaintiff and Class Members to unauthorized persons and the breach of the confidentiality of that information. Defendant's negligent failure to maintain, preserve, store, abandon, destroy, and/or dispose of Plaintiff and Class Members' medical information in a manner that preserved the confidentiality of the information contained therein, in violation of Cal. Civ. Code §§ 56.06 and 56.101(a).

180.    Defendant also violated Sections 56.06 and 56.101 of the CMIA, which prohibits the negligent creation, maintenance, preservation, storage, abandonment, destruction or disposal of confidential personal medical information.

181.    Section 56.10(a) of the CMIA provides that "[a] provider of health care, health care service plan, or contractor shall not disclose medical information regarding a patient of the provider of health care or an enrollee or subscriber of a health care service plan without first obtaining an authorization."

182.    Section 56.101(a) of the CMIA provides that "[e]very provider of health care, health care service plan, pharmaceutical company, or contractor who creates, maintains, preserves, stores, abandons, destroys, or disposes of medical information shall do so in a manner that preserves the confidentiality of the information contained therein. Any provider of health care, health care service plan, pharmaceutical company, or contractor who negligently creates, maintains, preserves, stores, abandons, destroys, or disposes of medical information shall be subject to the remedies and penalties provided under subdivisions (b) and (c) of Section 56.36."

Section 56.101(b)(1)(A) further provides that "[a]n electronic health record system or electronic medical record system . . . [p]rotect and preserve the integrity of electronic medical information."

183.   Section 56.35 of the CMIA provides that "[i]n addition to any other remedies available at law, a patient whose medical information has been used or disclosed in violation of Section 56.10, 56.104, 56.107, or 56.20 or subdivision (a) of Section 56.26 and who has sustained economic loss or personal injury therefrom may recover compensatory damages, punitive damages not to exceed three thousand dollars ($3,000), attorney's fees not to exceed one thousand dollars ($1,000), and the costs of litigation."

184.   Section 56.36(b) of the CMIA provides the following:

In addition to any other remedies available at law, an individual may bring any action against a person or entity who has negligently released confidential information or records concerning him or her in violation of this part, for either or both of the following:

(1) Except as provided in subdivision (e), nominal damages of one thousand dollars ($1,000). In order to recover under this paragraph, it is not necessary that the plaintiff suffered or was threatened with actual damages

(2) The amount of actual damages, if any, sustained by the patient.

185.   Defendant has misused, disclosed, and/or otherwise allowed third parties to access and view Plaintiff's and Class Members' personal medical information without their written authorization in violation of Civil Code §§ 56.10, 56.11, 56.13, 56.26, and 56.101.

186.   Plaintiff and Class Members' medical information was accessed, removed, and actually viewed by hackers and other unauthorized parties during and following the Data Breach.

187.   Plaintiff and Class Members' medical information that was the subject of the Data Breach included "electronic medical records" or "electronic health records" as referenced by Civil Code § 56.101(c) and defined by 42 U.S.C. § 17921(5).

188. Defendant's computer systems did not protect and preserve the integrity of electronic medical information in violation of Cal. Civ. Code § 56.101(b)(1)(A). As a direct and proximate result of Defendant's above-noted wrongful actions, inaction, omissions, and want of ordinary care that directly and proximately caused the Data Breach, and violation of the CMIA, Plaintiff and the Class Members have suffered (and will continue to suffer) economic damages and other injury and actual harm in the form of, inter alia, (a) present, imminent, immediate and continuing increased risk of identity theft, identity fraud and medical fraud—risks justifying expenditures for protective and remedial services for which they are entitled to compensation, (b) invasion of privacy, (c) breach of the confidentiality of the PHI, (d) statutory damages under the CMIA, (e) deprivation of the value of their PHI, for which there is well-established national and international markets, and/or (f) the financial and temporal cost of monitoring their credit, monitoring their financial accounts, and mitigating their damages.

189. Defendant violated the CMIA by (1) failing to implement reasonable administrative, physical and technical safeguards to protect, secure and prevent the unauthorized access to, and acquisition of, Plaintiff's and Class Members' personal medical information; (2) failing to implement reasonable data security measures, such as intrusion detection processes that detect data breaches in a timely manner, to protect and secure Plaintiff's and Class Members' personal medical information; (3) failing to use reasonable authentication procedures to track Plaintiff's and Class Members' personal medical information in case of a security breach; and (4) allowing undetected and unauthorized access to servers, networks and systems where Plaintiff's and Class Members' personal medical information was kept, all in violation of the CMIA.

190. Defendant further violated the CMIA by affirmatively sharing and disclosing, and providing third parties with access to Plaintiff's and Class Members' medical information.

191.    As a direct and proximate result of Defendant's wrongful actions, inaction, omission, and want of ordinary care that directly and proximately caused the release of Plaintiff and Class Members' Private Information, Plaintiff and Class Members' personal medical information was viewed by, released to, and disclosed to third parties without Plaintiff and Class Members' written authorization.

192.    As a result of the Data Breach, unauthorized parties obtained personal medical information, viewed it, and now have it available to them to sell to other bad actors, including on the dark web, post the information on the dark web or otherwise misuse the information.

193.    As a further result of the Data Breach, the confidential nature of Plaintiff's and Class Members' medical information was breached as a result of Defendant's negligence. Specifically, Defendant knowingly allowed and affirmatively acted in a manner that actually allowed unauthorized parties to access and view Plaintiff's and Class Members' Private Information, which was viewed and used when the unauthorized parties engaged in the above-described fraudulent activity.

194.    Defendant's negligent failure to maintain, preserve, store, abandon, destroy, and/or dispose of Plaintiff's and Class Members' medical information in a manner that preserved the confidentiality of the information contained therein violated the CMIA.

195.    Defendant's failure to implement adequate data security measures to protect the PHI of Plaintiff and Class Members was a substantial factor in allowing unauthorized parties to access Defendant's computer systems and acquire the PHI of Plaintiff and California Subclass Members.

196.    As a direct and proximate result of Defendant's violation of the CMIA, Defendant allowed the PHI of Plaintiff and Class Members to (a) escape and spread from its normal place of

storage through unauthorized disclosure or release; and (b) be accessed and acquired by unauthorized parties in order to, view, mine, exploit, use, and/or profit from their personal medical information, thereby breaching the confidentiality of their personal medical information. Plaintiff and Class Members have accordingly sustained and will continue to sustain actual damages as set forth above.

197.    As a direct and proximate result of Defendant's wrongful actions, inaction, omissions, and want of ordinary care that directly and proximately caused the Data Breach, Plaintiff's and Class Members' personal medical information was viewed by, released to, and disclosed to third parties without Plaintiff's and Class Members' written authorization.

198.    Plaintiff and Class Members were injured and have suffered damages, as described above, from Defendant's illegal and unauthorized disclosure and negligent release of their medical information in violation of Cal. Civ. Code §§ 56.10 and 56.101, and Plaintiff and Class Members are entitled to (i) actual damages, (ii) nominal damages of $1,000 per individual, (iii) punitive damages of up to $3,000 per individual, and (iv) attorneys' fees, litigation expenses, and court costs under California Civil Code § 56.35 and 56.36.

## VII.    <u>PRAYER FOR RELIEF</u>

Plaintiff, on behalf of herself and on behalf of the Class, requests that the Court:

a.  Certify this case as a class action, appoint Plaintiff as class representative, and appoint Plaintiff's Counsel as Class Counsel for Plaintiff to represent the Class;

b.  Find that Defendant breached its duty to safeguard and protect the PII and PHI of Plaintiff and Class Members that was compromised in the Data Breach;

c.  Award Plaintiff and Class Members appropriate relief, including actual and statutory damages, restitution, and disgorgement;

d.  Award equitable, injunctive, and declaratory relief as may be appropriate;

e.  Award all costs, including experts' fees and attorneys' fees, and the costs of prosecuting this action;

f.  Award pre-judgment and post-judgment interest as prescribed by law; and

g.  Grant additional legal or equitable relief as this Court may find just and proper.

## VIII.    <u>DEMAND FOR JURY TRIAL</u>

Plaintiff hereby demands a trial by jury of all issues so triable.

March 20, 2026                                        Respectfully submitted,

/s/ J. Barton Goplerud

**J. Barton Goplerud, AT0002983**
**Brian O. Marty, AT0011622**
SHINDLER ANDERSON GOPLERUD &
WEESE P.C.
5015 Grand Ridge Drive, Suite 100
West Des Moines, Iowa 50265-5749
Telephone:    (515) 223-4567
Facsimile:    (515) 223-8887
Email:        goplerud@sagwlaw.com
              marty@sagwlaw.com


Jeff Ostrow (*pro hac vice* forthcoming)
**KOPELOWITZ OSTROW P.A.**
One West Law Olas Blvd., Suite 500
Fort Lauderdale, Florida 33301
Tel: (954) 332-4200
ostrow@kolawyers.com

*Counsel for Plaintiff and the Putative Class*